THE UNION PACIFIC RAILROAD COMPANY V. JOHN A. LUCK.

No. 15,758. (100 Pac. 278.)

SYLLABUS BY THE COURT.

RAILROADS—*Injury to Passenger—Negligent Operation of Train —Evidence.* The plaintiff, a passenger on one of the defendant's trains, desired to stop at the station of Carneiro. After the train left the last station before Carneiro a train employee announced that Carneiro would be the next stop. Soon afterward the train stopped a half mile or more from the station, where there were no facilities for the discharge of passengers. It was night, very dark, and raining very hard. The plaintiff could not see where he was and undertook to leave the train. While he was in the act of swinging to the ground from the lowest step of his car the train started, and he was precipitated into a ditch beside the track and injured. Accepting all the plaintiff's evidence as true, it is held that negligence on the part of the defendant was not established.

Error from Ellsworth district court; ROLLIN R. REES, judge. ˙ Opinion filed January 12, 1909.  Reversed.

*R. W. Blair, H. A. Scandrett,* and *B. W. Scandrett,* for plaintiff in error.

*A. M. Harvey,* for defendant in error.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the defendant for damages resulting from a personal injury alleged to have been occasioned by the defendant's negligence, and recovered.   The defendant prosecutes error, claiming that the evidence adduced on the trial does not show negligence in respect to the matters of which complaint is made.

The substance of the petition is that plaintiff was a passenger on a passenger-train running west from Salina.   His destination was Carneiro.   Before Carneiro was reached that station was called, and shortly afterward the train stopped.   Believing he had arrived at the end of his journey, the plaintiff undertook to leave the train.   The night was so dark and stormy he could not see where he was.   The train started without warning, as he was in the act of alighting, and he was precipitated into a ditch beside the track and was hurt. The train had stopped a mile from the station.   The defendant was negligent in calling the stop, in stopping the train soon after the call, away from the station, where no facilities for alighting were provided, in permitting the plaintiff to alight at an unsafe place, and in starting the train without warning.

The plaintiff says that after the train left Brookville, the last station before Carneiro, a brakeman called out, "The next stop is Carneiro," and that afterward the call was made that way again.   None of the witnesses except the plaintiff heard more than one announcement, but all of them express it in the same language, and it is impossible to interpret what was said as a warning

21—79 KAN.

that the train was about to stop at Carneiro or was about to stop at all. The court is not disposed to parley over the quiddit whether a notification of this character should use the word "station" or the word "stop." The plaintiff does not claim that he was alert to note the sometime difference in signification between the two words. The meaning of such an announcement is well understood, and the one made in this case was not misunderstood at the time. All that occurred was that persons aboard were apprised that the next place for the discharge of passengers would be Carneiro, so that those intending to stop there might have an opportunity to prepare at leisure and with care and comfort to leave the train when it reached that place. The plaintiff says he was ignorant of the rules of the defendant respecting the announcement of stations and does not claim that he was misled because the call was repeated. The train was an excursion train. The cars were crowded. People were riding in the vestibules. The plaintiff says he does not think the brakeman making the call could get through his car. The passengers were noisy. Young people were moving about and were laughing, talking, singing, calling out to each other and having fun generally, and the repetition of the same announcement in the same way indicates care and not negligence. Although the plaintiff was misled by the fact that the train stopped soon after the announcement, the defendant was guilty of no breach of duty in making the announcement as it did.

The next question is, Was the defendant negligent in stopping the train so soon after the announcement was made? Here there is an entire failure of proof. The plaintiff merely proved that the train stopped a half mile or more from the station, when there were no facilities for alighting. He made no effort to show the cause of the event. Incidentally a plausible explanation of the stop did appear, which the court recognized in submitting the case to the jury. The night was

pitch-dark, and it was raining very hard.  All the witnesses emphasize these conditions, and the plaintiff says he could not see the ground when he attempted to alight.  When the train stopped the conductor stepped to the ground with his lantern.  The light from the lantern fell upon a mile-post, which revealed the locality of the train.  In answer to a question from a passenger the conductor said it was so dark and stormy the engineer could not tell where he was.  A porter who stepped to the ground with his lantern from another car made the same explanation to another inquirer. After the train started it proceeded very slowly, almost stopped again, and finally felt its way into the station. No doubt the conductor and porter gave the true reason for the action of the engineer.  If so, the engineer acted in strict accord with his duty to observe the highest possible diligence to insure the safety of the passengers on his train, and deserves nothing but commendation for his prudence.  The evidence suggests no other explanation for the stop.  In the absence of evidence right conduct is presumed.  Negligence will not be presumed, and the charge of negligence in stopping the train fails.

The defendant could not be negligent in permitting the plaintiff to leave the train before it reached the station except under circumstances which do not appear. If the defendant's employees had known the plaintiff was disembarking under an innocent misapprehension that the train had arrived at the station, and then had failed to warn him that the station had not been reached, it might be said they failed in their duty; but such is not the case.  The plaintiff occupied the last seat at the rear end of his car.  When the train stopped he left his seat and went out of the rear door of the car. A companion admonished him to hurry or he would be left.  His progress was unimpeded, the vestibule door being open.  He started to get off, and was swinging one foot to the ground from the lowest step of the car when the train started.  He first said the stop con-

sumed possibly a minute of time, and then said about half a minute. Other witnesses made it certain that the stop was very brief. The plaintiff saw no trainmen, and says there were none near when he got off. There is nothing to show that any of the trainmen knew or had any reason to believe the train would stop where it did, nothing to show that any of them should or could have intercepted the plaintiff after the train stopped and before it started, neither allegation nor proof that the train was insufficiently supplied with employees, and no proof that those in charge were negligently distributed about the train.

It is clear the plaintiff related the stop to the announcement and believed he ought to leave the train. When he attempted to alight it was his duty to observe the surroundings and see, so far as he could, whether the train had reached Carneiro. Adult passengers in possession of the usual faculties are held to knowledge of the ordinary, every-day incidents of travel by rail. After the next station has been announced a train may rightfully stop for water or fuel, for a crossing, to take a side track, and for various other previously planned purposes. It may be signalled to make an unexpected stop, a dangerous obstruction to further progress may suddenly appear, and numberless other accidental causes may interfere to compel a halt before the station is reached. No duty rests upon a railway company to imprison its passengers between stations. In the absence of information to the contrary they may be credited with common knowledge and ordinary prudence. When a stop is made they should look for the proper landmarks of a place for the discharge of passengers, and not leap blindly off. The absence of lights, of buildings, of platforms, and of other station structures and accessories, the presence of ditches and many other facts should put them on guard, and generally a diligent use of the senses should be made, according to the circumstances, to ascertain if the true destination

has been reached. But the evidence in this case fairly shows the plaintiff was no more capable of determining the locality of the train than the engineer, and nothing short of a notification given in advance of the stop that the train was not stopping at the station would have protected him. Manifestly the defendant could not be negligent in failing to give such a warning unless the trainmen knew of the intention to stop long enough beforehand to afford them an opportunity to advise the plaintiff of the conditions. There is no evidence from which it can be inferred that this was possible. There is nothing whatever to indicate that the engineer knew it would be necessary or advisable to stop a moment before he did so, or that the conductor or other employees had any reason to believe the train would stop before the fact occurred. The result is that no negligence in allowing the plaintiff to leave the train is proved.

The last charge of negligence is of course mere makeweight. Carneiro was not the end of the run. The plaintiff knew the train was going on and needed no warning to that effect. What he needed was time in which to get off. The starting of the train was a necessary incident to the kind of stop which had been made, and the defendant could proceed without fault as soon as the emergency for the stop was at an end.

The plaintiff argues that the train should have kept moving at a slow pace, but he fails to show the conditions confronting the engineer and has no right to dogmatize respecting his conduct.

The questions discussed were properly presented to the trial court by the motion for a new trial. The judgment of the district court is reversed, and the cause is remanded for a new trial.